COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


LOUIS P. COUREMBIS

                                                OPINION BY
v.        Record No. 1176-03-4        JUDGE ROSEMARIE ANNUNZIATA
                                                MAY 4, 2004

SYLVIA L. COUREMBIS


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Paul F. Sheridan, Judge

Peter M. Baskin (Nicholas A. Balland; Pelton, Balland, Demsky,
Baskin & O'Malie, on briefs), for appellant.

Marcia M. Maddox (Michael C. Miller; Katharine W. McGregor;
Maddox, Cole & Miller, on brief), for appellee.


Louis P. Courembis (husband) appeals from a final decree of divorce which awarded

Sylvia L. Courembis (wife) $2.7 million from the marital estate and $64,000 per year in spousal

support.  Husband contends that the trial court erred by including certain properties within the

marital estate and in determining the need for, and amount of, spousal support.  Wife filed a

motion to dismiss husband's appeal on certain procedural grounds which we address in the body

of the opinion.  Wife also cross-appeals, challenging the trial court's decision not to include

certain properties, or their total value, in the marital estate.  Wife's cross-appeal raises issues of

first impression in Virginia.  For the reasons that follow, we affirm the decision of the trial court,

but remand for determination of an award of attorney's fees to wife.

I.  Background

Husband and wife were married on August 30, 1975.  Before and during the marriage,

husband owned and operated successful real estate businesses.  At the time of the parties'

separation in 2001, the combined assets of husband and wife were valued at approximately $14 million.

This appeal centers around three parcels of real estate: (1) the "Route 50 joint venture" property, (2) the "Lee-Taylor" property, and (3) the "Horizon and Lorcom Towers apartments."

Husband acquired the Route 50 joint venture property before the parties were married. Husband owned a one-third interest in this property. During the marriage, the property was rezoned from R-4 to R-12 and husband filed a site plan for the property allowing townhouses to be built on the site. As a result of these efforts, the property increased in value from approximately $500,000 to $1,573,000 when it was sold at auction. The auction was prepared and conducted by wife, who spent a "couple of days" preparing "all the details . . . [and] set[ing] up the rules." Consistent with his one-third interest in the property, husband's share of the increase in value totaled $357,667. From husband's share of the increase in value of the Route 50 property, the trial court awarded wife $200,000.

The Lee-Taylor property is composed of fifteen lots, all of which were purchased during the marriage. The lots were purchased in such a way as to make the entire property contiguous, thereby increasing its overall value to developers. Although husband assumed the lead role in acquiring and assembling the lots, wife contributed to efforts to rezone the property. Wife completed the application for rezoning, contacted members of the board charged with making zoning decisions, and garnered support from members of the community for the rezoning effort.

Wife called an expert, Oakleigh Thorne, who testified that the Lee-Taylor property increased in value during the marriage by $2,393,000. Thorne attributed the increase in value to the rezoning of the property, the assemblage of the lots into one contiguous parcel, and passive market forces. The total value of the property is currently estimated to be $6,125,000. The trial court accepted the testimony of wife's expert, finding that the property increased in value by

approximately $2.4 million as a result of the efforts of both parties while married. From that increase in value, the trial court awarded wife $800,000.

The Horizon and Lorcom Towers properties were acquired before the marriage by The Horizon Corporation and Courembis Enterprises, respectively. The Horizon Corporation was a corporate entity in which husband owned seventy-two percent of the stock. Courembis Enterprises was a partnership consisting of husband and two other relatives. Apartment buildings were built on the properties. Wife was a corporate officer and treasurer of The Horizon Corporation, and she kept an office in the Horizon building. The apartment buildings were sold in 1999 for a total of approximately $17 million dollars.

Wife testified that she played a significant role in selling the apartment buildings, stating "I did everything, because Louis didn't do it." Wife kept charts of the bids for the properties, which she updated each time a new bid was placed. Wife said that, relative to the time husband spent on the sale, she committed more time handling the process, which continued about a year. When the buildings were sold, husband's share of the proceeds amounted to approximately $6.3 million dollars after taxes. Husband stated that those funds were kept in his name only and were never placed in a joint account. However, wife testified that she managed the subsequent investment of the funds and exercised some control over them. She produced a document, signed by her husband, which authorized her to make telephone transfers from First Virginia Bank where some of the proceeds were placed after the sale. With her transfer authority, wife bought and sold short-term Treasury bills, "transfer[ring] money back and forth as they matured." Wife alone maintained records of the transfers. Wife also testified that she interviewed several companies, evaluating them as venture capital prospects for her husband. Husband invested approximately $600,000 in Alliance Global Investor Services, one of the companies she interviewed. Wife prepared the application for that investment. The trial court

found that the Horizon and Lorcom Towers were husband's "pre-marital" and separate properties and that "[t]here is no marital component to either property's value.  The proceeds from the sale . . . are the [husband's] sole and separate property."

In addition to a share of the Route 50 and Lee-Taylor properties, the trial court awarded wife $64,000 in spousal support per year and ordered husband to pay wife's attorney's fees in the amount of $90,000.  Husband appeals the trial court's decision, arguing that the trial court erred by awarding virtually the entire marital estate to wife, including within the marital estate the increase in value of the Route 50 and Lee-Taylor properties, and awarding wife attorney's fees.  Wife cross-appeals, arguing that the trial court erred by not including, within the marital estate, the entire value of the Lee-Taylor property or any portion of the proceeds from the sale of the Horizon and Lorcom Towers apartments.  Wife also requests attorney's fees incurred in defending husband's appeal.  We find no error and affirm.

## II.  Procedural Default

Prior to our hearing of the case, wife filed a motion to dismiss husband's appeal on the ground that it was procedurally defaulted.  Wife's motion was based on the following:  (a) husband failed to preserve the issues he presents to this Court for appeal, and (b) husband incorrectly stated facts in his brief and inadequately cited the record in his statement of facts.  We consider each ground of the wife's motion seriatim.

### A.  Failure to Preserve Objections Pursuant to Rules 5A:18 and 5A:20

Briefly stated, husband questions on appeal:  (1) whether the court's award of nearly all the marital estate to the wife was equitable; (2) whether the court erred in awarding spousal support to the wife; (3) whether the court erred in determining the amount of the spousal support award; (4) whether the court complied with Code § 20-107.1(F) when it awarded spousal support to the wife; (5) whether the court erred in awarding counsel fees payable by husband to wife; and

- 4 -

(6) whether the court erred in determining that the increase in value of certain properties, the Lee-Taylor property and the Route 50 property, should be included within the couple's marital assets.

Wife contends in her motion to dismiss the appeal that husband failed to properly preserve his objections to the trial court's ruling as required by Rule 5A:18. Wife also contends that husband failed to comply with Rule 5A:20 because his "questions presented" do not reference pages in the appendix where such questions were properly preserved. We agree that husband failed to comply with Rule 5A:20 regarding questions (1) through (4), and, assuming that we should address the matter any further, we agree that he failed to comply with Rule 5A:18 regarding questions (1) through (5). We find that question (6) was preserved and is properly before the Court.

Respecting questions (1) through (4), husband clearly did not comply with Rule 5A:20. Rule 5A:20(c) requires that the questions presented must contain a clear and exact reference to the appendix or record where each question was preserved. In his opening brief, husband cites only page 3616 of the appendix as evidence that issues (1) through (4) were preserved. That page of the appendix contains the last page of the court's final decree of divorce which counsel for husband signed "seen and objected to." Such an objection is not sufficient under Rule 5A:18 to preserve an issue for appeal. "Since the rule provides that '[a] mere statement that the judgment or award is contrary to the law and the evidence' is not sufficient, it follows that a statement that an order is 'seen and objected to' must also be insufficient." Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991).

The question remains whether husband's questions (1) through (4) were preserved pursuant to Rule 5A:18, despite husband's Rule 5A:20 failure to cite the appropriate pages in the appendix. Normally, "[w]e will not search the record for errors in order to interpret the

appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). In response to wife's motion to dismiss, however, husband cites various other pages in the appendix as evidence that his questions were preserved. We find husband's efforts lacking and hold that questions (1), (3), (4), and (5) are barred because husband failed to state his objection at trial. We also find that question (2) is barred because husband fails to make the same argument on appeal that he made at the trial court.

As evidence that question (1) was preserved, husband cites pages 805 through 818 of the appendix. These pages represent the bulk of the closing arguments of husband's counsel. Husband's counsel never argued during his closing argument that the wife's award was inequitable because it constituted virtually all of the marital estate. Husband also cites four trial memoranda filed with the court as evidence that his objection was preserved. Three of these memoranda were filed by wife who, obviously, did not object to any award. The fourth memorandum was filed by husband and discusses, for the most part, which properties should be considered marital and which should be considered separate. Husband therefore failed to present his objection in question (1) to the trial court. Accordingly, Rule 5A:18 mandates that we not consider question (1) on appeal.

We likewise find that questions (3) and (4) are procedurally defaulted. Husband's citations to the record do not reveal that he presented these arguments to the trial judge. Accordingly, Rule 5A:18 bars our consideration of these issues.

Husband contends that he preserved his appeal on question (5) during closing argument. There, he asked the court "to deny Mrs. Courembis'[s] request for . . . attorneys' fees in this case." This plain statement does not meet the requirements of Rule 5A:18 because it is not an objection stated "together with the grounds therefor." We therefore decline to address the trial court's award of attorney's fees.

- 6 -

With respect to question (2), husband also cites his closing argument. Husband argued in closing that "Mrs. Courembis has [not] demonstrated a need for spousal support in this case." He justified this argument by pointing to evidence that she had sufficient funds to sustain herself absent an award of support. On brief, however, husband fails to make the same argument. Instead, he argues primarily that the amount of the award was inequitable and that upholding such an award is contrary to public policy. We will not "address [a party's] related, but unsupported assertion[s]." Novak v. Commonwealth, 20 Va. App. 373, 389, 457 S.E.2d 402, 410 (1995). We therefore find that question (2) is barred by Rule 5A:18.

In the alternative, husband argues that the court's rulings on all issues were narrow enough to obviate the need for greater specificity in his objections, citing Mackie v. Hill, 16 Va. App. 229, 429 S.E.2d 37 (1993). In Mackie, the trial court's only factual finding concerned whether a property settlement agreement should have been incorporated into a final decree. Id. at 231, 429 S.E.2d at 38. Under those circumstances, we held that "seen and objected to" was sufficient to preserve the objection for appeal. Id. Here, however, the trial court's final decree encompassed a broad range of subjects, and each of husband's objections contains distinct issues. Accordingly, we find that our ruling in Mackie does not apply to the facts of this case. Herring v. Herring, 33 Va. App. 281, 287, 532 S.E.2d 923, 927 (2000) ("The trial court's final order is not limited to a single finding or conclusion and, therefore, Mackie does not apply.").

Husband further argues that the ends of justice exception to Rule 5A:18 should apply to the issue of spousal support. Relying on this Court's decision in Herring, husband claims that the court's failure to comply with the affirmative statutory duty found in Code § 20-107.1(F)— which directs the trial court to make "written findings and conclusions . . . identifying the factors in subsection E which support the court's order"—constitutes a basis for applying the ends of justice exception, notwithstanding his failure to bring the alleged error to the court's attention.

We disagree.  In <u>Herring</u>, we agreed to consider, despite appellant's failure to contemporaneously object at trial, whether the trial court erred by failing to determine the presumptive amount of child support, pursuant to Code § 20-108.1(B), and by deviating from the presumptive amount.  <u>Herring</u>, 33 Va. App. at 287, 532 S.E.2d at 927.  We specifically limited our holding to the failure to explain a deviation from the guidelines.  "To make clear our holding, we note that our application of the ends of justice exception in this case . . . applies only to the court's failure in child support cases to expressly calculate the guideline amount or to make the written findings required to justify its deviation from that amount."  <u>Id.</u> at 287 n.2, 532 S.E.2d at 927 n.2.  <u>Herring</u> is specifically limited to its facts, and we decline to extend its holding to the issue presented here.

Husband also argues that the ends of justice exception to Rule 5A:18 should apply because the record affirmatively shows that a miscarriage of justice has occurred.  Husband fails to develop this argument on appeal, and accordingly we will not address it.  <u>Buchanan</u>, 14 Va. App. at 56, 415 S.E.2d at 239.

We will consider, however, husband's sixth question.  Wife contends that husband's objection to the trial court's award of a portion of the increase in value of the Route 50 property is procedurally barred because he mentioned only the Lee-Taylor property in his motion to strike.  Viewed in its totality, however, husband's motion to strike can be fairly understood as an objection to the court's treatment of both the Route 50 and Lee-Taylor properties, which wife argued should be considered "marital" properties by virtue of marital effort.  In his motion to strike, husband countered wife's theory, arguing that her testimony regarding the effect of her efforts "doesn't even approach the statutory definitions" of "personal efforts" because her "secretarial services" and "auction services" did not contribute to any increase in value.  Husband's reference to wife's secretarial and auction services was relevant to the analysis the

court performed in classifying each property. Furthermore, husband presents the same grounds for his objection on appeal as he did in the trial court, namely that wife failed to prove that her efforts contributed to the increase in value of each property. We therefore find that Rule 5A:18 does not bar question (6).

## B. Incorrect Statement of Facts and Improper Citations to the Record

Wife also contends that husband's appeal should be dismissed because he cites facts in his brief that are not a part of the record, misconstrues other facts, and inadequately cites the record in his statement of facts. Although husband's brief contains a few inadequacies, most are inconsequential in nature, and none relate to any matter of substantive importance in this appeal. Furthermore, wife does not argue that the specific failures she cites affected her ability to prepare a response to husband's appeal. Finally, husband correctly notes that, if wife disagrees with his statement of facts, she may include her own statement of facts which she believes to be an accurate recitation of the record. See Rule 5A:21(b). We will not, therefore, dismiss husband's appeal on the grounds urged by wife.[1]

## III. Route 50 Property

We now consider the merits of this appeal. Husband contends that the trial court incorrectly determined that a portion of the proceeds from the sale of the Route 50 property constituted marital property subject to equitable division. In support of his argument, husband claims that wife's "secretarial" tasks did not contribute to the property's rise in value. He also

---

[1] We do not hold that an appellant may violate Rule 5A:20 with impunity because the appellee may respond to inaccuracies pursuant to Rule 5A:21. Nor do we hold that dismissal, or an award of attorney's fees, is never an appropriate sanction for failure to cite the record accurately pursuant to Rule 5A:20. In a case where such failures are more substantial and affect the opposing party's ability to respond, dismissal or an award of attorney's fees may indeed be warranted.

claims that the trial court erred in not considering all the factors found in Code § 20-107.3(E).

We find no error in the trial court's decision on this issue.

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge, and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). In fashioning that award, the trial court is guided by Code § 20-107.3.

Code § 20-107.3 directs that the trial court determine that property which is separate, that which is marital, and that which is part marital and part separate. After determining the extent of the marital estate, the trial court must construe an equitable award in accordance with the factors laid out in Code § 20-107.3(E).

The trial court may classify some property as part marital property and part separate property. Code § 20-107.3(A)(3) provides that:

> The court shall classify property as part marital property and part separate property as follows:
>
> a. In the case of income received from separate property during the marriage, such income shall be marital property only to the extent it is attributable to the personal efforts of either party. In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.
>
> For purposes of this subdivision, the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.
>
> "Personal effort" of a party shall be deemed to be labor, effort, inventiveness, physical or intellectual skill, creativity, or

- 10 -

managerial, promotional or marketing activity applied directly to the separate property of either party.

Wife does not contest that the Route 50 property was acquired before the parties' marriage. Therefore, as stated in the statute, wife has the burden of proving that marital efforts contributed to the rise in the property's value. See Gilman v. Gilman, 32 Va. App. 104, 120, 526 S.E.2d 763, 771 (2001). We view the evidence on this issue in a light most favorable to wife as the prevailing party. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).

Wife argues first that her personal efforts significantly contributed to the Route 50 property's increase in value during the marriage.

> The increase in value of separate property becomes marital if the expenditure of marital funds or a married party's personal efforts generated the increase in value. The significant factor, however, is not the amount of effort or funds expended, but rather the fact that value was generated or added by the expenditure or significant personal effort.

Moran v. Moran, 29 Va. App. 408, 412, 512 S.E.2d 834, 836 (1999). Second, wife argued below, and argues here, that under the statute the increase in value to separate property attributable to the significant personal contributions of *either* party renders that increase marital property. We agree with wife's second argument for two reasons.

First, the plain reading of the statute confirms that *either* party's personal efforts may contribute to the increase in value and that such increase in value constitutes marital property.[2] Code § 20-107.3(A)(3)(a) ("In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of *either* party have contributed to such increases." (emphasis added)). Second, although this is an issue that has not been expressly raised or addressed in Virginia, cf.

---

[2] On appeal, husband ignored the plain meaning of the statute and argued that the increase in value of the Lee-Taylor lots should be considered his separate property despite undisputed evidence that his personal efforts contributed to such increase. See *infra* Part IV.B.

Congdon, 40 Va. App. at 267-68, 578 S.E.2d at 839-40 (affirming, over wife's objection, trial court's classification of the increase in value of company stock as ten percent marital property on ground that evidence supported the determination that husband's efforts contributed to ten percent of the increase), a majority of other states have come to the same conclusion. As noted in Turner's treatise on the equitable distribution of property,

> [m]ost states . . . define a marital contribution broadly to include the efforts of either the owning or the non-owning spouse. The majority rule is clearly correct, as the marital estate should include the fruits of either spouse's efforts during the marriage. If separate property appreciates because of the owning spouse's efforts alone, the appreciation is a fruit of the marital tree, and thus marital property.

Brett R. Turner, Equitable Distribution of Property § 5.22, at 240 (2d ed. 1994 & Supp. 2003).

Here, wife's testimony regarding her contributions to the Route 50 property was insufficient as a matter of law. She testified that "she set up all the details of the auction, collected the deposit, and signed everybody in, and helped . . . conduct the auction." She testified that the time she expended in preparing the auction amounted to "probably a couple of days." Her testimony gave no indication, moreover, that her personal efforts generated the increase in value. See Moran, 29 Va. App. at 412, 512 S.E.2d at 836.

Nonetheless, wife's testimony also established that *husband's* efforts contributed to the increase in value. She testified that the Route 50 property was worth "about $500,000" before husband filed a site plan. After husband filed a site plan for the property, wife testified that the value of the property increased threefold. Wife also affirmed that the site plan was prepared during the parties' marriage.

Accordingly, viewing the evidence in a light most favorable to wife, we find that she submitted sufficient evidence of marital contributions to the property from which the trial court could reasonably conclude that the increase in value constituted a marital asset subject to

equitable division. Because we cannot say that the trial court's decision was plainly wrong, we will not disturb it on appeal.

We also reject husband's argument that the trial court failed to consider all the factors listed in Code § 20-107.3(E) in making its award. "The trial court in fixing a monetary award is required to consider all of the factors set forth in Code § 20-107.3(E). The court need not quantify or elaborate exactly what weight was given to each of the factors. The court's findings must, however, be based upon credible evidence." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988) (citing Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). Here, the trial court's finding was based upon credible evidence provided by the wife relevant to the factors in Code § 20-107.3(E). Therefore, the trial court's ruling will stand.

## IV. Lee-Taylor Property

Husband contends that the trial court also erred in determining that a portion of the increase in the value of the Lee-Taylor property constituted marital property. Wife responds that the trial court's classification of the Lee-Taylor property should be upheld because both she and husband significantly contributed to its rise in value. In a cross-appeal, wife argues that the trial court's award should be modified to reflect the total fair market value of the entire property, not just the property's increase in value, because the entire property constituted marital property. We address each argument in turn.

## A. The Lee-Taylor Property Was Not Marital

In her cross-appeal, wife argues that the *entire* Lee-Taylor property should be considered marital property because husband failed to rebut the presumption that property acquired during marriage is marital property. Although the lots constituting the Lee-Taylor property were assembled during the parties' marriage, we find that the trial judge did not err in limiting its

award to wife to a portion of the increase in value of the property. For this issue, we view the evidence in a light most favorable to husband. Congdon, 40 Va. App. at 258, 578 S.E.2d at 835.

All property acquired during marriage is presumed to be marital property. Code § 20-107.3(A)(2). The party claiming that property acquired during the marriage is separate property bears the burden of rebutting this presumption. Rexrode v. Rexrode, 1 Va. App. 385, 392, 339 S.E.2d 544, 548 (1986). "Thus, where evidence is presented that property was acquired during the marriage, the trial judge must conclude that it is marital property unless adequate evidence is produced to establish that it is separate property as defined in Code § 20-107.3(A)(1)." Lambert v. Lambert, 6 Va. App. 94, 99, 367 S.E.2d 184, 187 (1988). "If no evidence is presented upon which a chancellor could properly identify and then classify an item as separate or marital property, faced with the statutory presumption and the lack of satisfactory evidence to rebut it, the chancellor must classify the property as marital." Stainback v. Stainback, 11 Va. App. 13, 17, 396 S.E.2d 686, 689 (1990).

Husband contends that his evidence establishes that the Lee-Taylor property is separate property because it was acquired with funds from separate property. In order to show that the Lee-Taylor property is separate property, husband must trace the acquisition of the property to separate property. Code § 20-107.3(A)(1)(iii) ("Separate property is . . . all property acquired during the marriage in exchange for or from the proceeds of sale of separate property.").

Here, viewing the evidence in a light most favorable to husband, we find that he presented sufficient evidence from which the trial judge could conclude that the acquisition of the Lee-Taylor property was adequately traced to separate property funds. Husband testified that he "already had [the funds for the purchase of the Lee-Taylor lots] in the bank." These funds, husband explained, came from the sale of a property, the liquidation of The Horizon

- 14 -

Corporation, and the refinancing of Lorcom Towers, all of which occurred during 1988.[3] Husband received approximately $2 million from these sources, and the evidence presented at trial established that the Lee-Taylor lots, in total, cost approximately $2 million to purchase. Husband stated further that the funds used to purchase the Lee-Taylor lots were never placed in a joint account with his wife and were not commingled with marital property. Husband called Thomas Blackwell, a Certified Public Accountant, who testified that he had personal knowledge of how these funds were used. According to Blackwell, husband used the funds to purchase the Lee-Taylor lots.

Wife, however, points to Blackwell's admission that he "was in South Carolina" from 1994 to 2000 and that he did not "know anything about those [six] years." Though the purchase of the Lee-Taylor lots began in 1991, at least three of the lots were acquired during Blackwell's absence. Wife also complains that neither husband nor Blackwell produced any bank statements, checks, or deposit slips tracing the funds from their purported source to the purported destination. Additionally, wife introduced evidence showing that, between 1976 and 1988, husband earned a total taxable income of nearly $3.5 million and that for the years 1989 and 1994 to the present, husband earned over $12.5 million. Wife reasons that the funds used to purchase the Lee-Taylor lots therefore could have come from husband's income which, she argues, would be considered marital property in the absence of evidence that it is not. See Code § 20-107.3(A)(2).

It is apparent, however, that the trial judge resolved the conflict in the evidence in husband's favor. The credibility of witnesses and the weight to be accorded their testimony is a matter within the sole province of the finder of fact. See Servis v. Commonwealth, 6 Va. App.

---

[3] Wife does not contest that these properties, when sold or refinanced, were separate properties.

507, 525, 371 S.E.2d 156, 165 (1988).  Because husband's testimony and the testimony of Blackwell, viewed in a light most favorable to the appellee, support the conclusion of the trial court that husband traced the acquisition of the Lee-Taylor lots to his separate property, we will not disturb that conclusion on appeal.  See Srinivasan, 10 Va. App. at 732, 396 S.E.2d at 678.

### B.  The Increase in Value of the Lee-Taylor Property Was Marital

Turning to husband's contention on appeal that the trial court erred in determining the increase in value of the Lee-Taylor property during the marriage to be marital property, we find it to be without merit.  Although the property itself was husband's separate property, as discussed *supra*, sufficient evidence was presented from which the trial court could conclude that marital efforts caused the increase in its value during the marriage.

Wife, as the non-owning spouse, bears the burden of showing that "(i) contributions of marital property or personal effort were made and (ii) the separate property increased in value."  Code § 20-107.3(A)(3)(a).  As stated in Part III *supra*, the increase in value is marital to the extent either party contributed to such increase.  Id.  We view the evidence in a light most favorable to wife as the appellee on this issue.  Congdon, 40 Va. App. at 258, 578 S.E.2d at 835.

First, wife contends that she made significant contributions to the Lee-Taylor property.  Primarily, wife relies on her efforts to re-zone the property.  After completing the zoning application papers and filing them with the zoning board, wife "wrote letters to each of the [zoning] board members" and "passed out some seven hundred flyers and talked to neighbors to convince – you know, to get approval."  Wife called expert Thorne who testified that the increase in value of the property was "due to the lots being re-zoned for townhouses and assembled under common ownership."

Second, wife argues that husband's contributions to the value of the property during marriage were properly considered as evidence that the Lee-Taylor property should partly be

- 16 -

characterized as marital. It is undisputed that, during the marriage, husband "assembled" various lots to make the Lee-Taylor property contiguous. He expended personal effort to acquire the lots by negotiating with some of the owners and by outbidding other developers at auctions. He negotiated with one reluctant owner "for fifteen years" before finally acquiring lots 3 and 17. It is further undisputed that the value of the property increased as a result of his efforts to assemble the lots.

We find that wife met her burden of proving that the increase in the value of the Lee-Taylor property constituted marital property subject to equitable division because the evidence proves that the efforts of both husband and wife contributed to the increase. Code § 20-107.3(A)(3)(a). The burden then shifted to the husband to prove that the increase in value was not caused by contributions of marital effort. See id. Husband did not present any credible evidence in this regard, and, in any event, concedes in his opening brief that some of the increase in value derived from his efforts to assemble the lots during the marriage. Thus, considering the evidence in its totality and in a light most favorable to wife, we cannot say the trial court erred.

### V. The Horizon and Lorcom Towers Apartment Buildings

Wife argues that, although the Horizon and Lorcom Towers apartment buildings were husband's separate property because they were acquired before the marriage, husband failed to maintain the proceeds received from the sale of the buildings as separate property. See Code § 20-107.3(A)(1)(iii) ("Separate property is . . . all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property.").

In showing that husband failed to keep the funds separate, wife points to her position as an officer and director of Horizon Corporation, the corporate entity that owned the buildings. She also points to her testimony that she maintained banking records and prepared financial

documents for both properties and that she had transfer authority over the proceeds.  She further claims that she "managed" the proceeds because she advised and directed husband towards certain investments after interviewing twelve different venture capital prospects.

Husband testified at trial that, wherever the proceeds from the sale eventually came to rest, they remained in his name only, subject to his ultimate control.  Wife does not contest this assertion on appeal.

The issue we must decide is whether the evidence established that the funds acquired from the sale of the apartment buildings, which were husband's separate properties, were maintained as separate property.[4]  See Code § 20-107.3(A)(1)(iii).  We find that the evidence establishes that husband maintained the proceeds as his separate property.

The evidence showed that husband did not commingle the proceeds with marital property, see Code § 20-107.3(A)(3)(d-e), and that he did not retitle the proceeds "in the joint names of the parties."  Code § 20-107.3(A)(3)(f).  Furthermore, no evidence established that husband intended to gift the proceeds to his wife.  See Code § 20-107.3(A)(1)(ii) ("Separate property is . . . all property acquired during the marriage by . . . gift from a source *other than the other party*." (emphasis added)); Code § 20-107.3(A)(2)(iii) ("Marital property is . . . all other property acquired by each party during the marriage *which is not separate property as defined above*." (emphasis added)); Code § 20-107.3(A)(3)(d-f) (stating that separate property shall "retain its original classification" "to the extent . . . [it] is retraceable . . . and *was not a gift*" (emphasis added)); see also Kelln v. Kelln, 30 Va. App. 113, 122, 515 S.E.2d 789, 793 (1999).

---

[4] Although some of the evidence wife presents may support an argument that her "personal efforts" contributed to the increase in value of the apartment buildings, entitling her to share in the sales proceeds as part marital property, wife limits her argument to husband's failure to maintain the proceeds as separate property.  We, thus, do not address the issue of whether her personal efforts entitle her to a share of the proceeds.

Wife, however, urges a new theory as a basis for reversal on this issue. She reasons that her management of husband's separate funds is evidence that husband did not maintain the proceeds as separate property. She cites no authority in support of her contention, and we have found none. Accordingly, we find that the evidence and the law supports the trial court's determination that the proceeds remained separate, see Code § 20-107.3(A)(1)(iii), and we will not disturb that finding on appeal.

## VI. Attorney's Fees

Wife requests an award of attorney's fees in this case. Because husband clearly failed to comply with Rule 5A:18 and Rule 5A:20 with respect to the issues noted above, see *supra* Part II.A, we remand to the trial court with direction that it award wife reasonable attorney's fees incurred in defending that portion of husband's appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 694, 479 S.E.2d 98, 100 (1996).

## VII. Conclusion

Because we find that the trial court's allocation of the assets was supported by the evidence and the law, we affirm, but remand to the trial court for an award of attorney's fees to wife.

Affirmed and remanded.

McClanahan, J., concurring:

On appellant's sixth question, I concur in the majority's result. However, I agree with wife that the issue is procedurally barred. Husband referenced only the Lee-Taylor property in his motion to strike. The majority opinion indicates that "[v]iewed in its totality . . . husband's motion to strike can be fairly understood as an objection to the court's treatment of both the Route 50 and Lee-Taylor properties." The transcript reveals no evidence that husband made *any* objection to, or mention of, the Route 50 property in his motion to strike. We should not, therefore, impute his argument about the Lee-Taylor property to the Route 50 property.

Rule 5A:18 states: "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." See also Code § 8.01-384(A). "'The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" Ohree v. Commonwealth, 26 Va. App. 299, 307, 494 S.E.2d 484, 488 (1998) (quoting Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991)). When such specific objections have not been made, this Court will not consider an argument on appeal that was not presented to the trial court. Id. at 308, 494 S.E.2d at 488 (citing Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991)).

We have held on numerous occasions that where an appellant fails to state the alleged error with specificity to the trial court, he or she will not be heard to complain on appeal. See Campbell v. Commonwealth, 12 Va. App. 476, 405 S.E.2d 1 (1991). Appellant failed to raise the issue in his motion to strike. Thus, Rule 5A:18 and Code § 8.01-384(A) bar our consideration of this question on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

- 20 -