COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and McClanahan
Argued at Richmond, Virginia


LOUISE B. GILLIAM
                                                              OPINION BY
v.        Record No. 0288-08-2                        JUDGE ROBERT P. FRANK
                                                            MARCH 4, 2009
ARTHUR L. McGRADY


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Francis L. Buck (Bradford M. Young; Buck, Toscano & Tereskerz,
Ltd., on brief), for appellant.

No brief or argument for appellee.


Louise B. Gilliam, appellant (wife) appeals a finding that a "trust fund tax"[1] debt due the

federal government for payroll taxes, including penalty and interest, is a marital debt, subject to

apportionment under Code § 20-107.3(E). She also contends the trial court erred in finding she

had the burden to prove the "trust fund taxes" were not marital debt. For the reasons stated, we

affirm in part, reverse in part, and remand.

BACKGROUND

The parties were married in 1990 and separated October 7, 2005. After a number of jobs,

the parties agreed that husband should start a paint contracting business. Throughout the

marriage, wife worked as a paralegal, either full-time or part-time, except for brief periods

during and following her pregnancies. In April of 2000, husband formed Premier Painting, LLC

---

[1] Employers must withhold federal income taxes and social security taxes from an
employee's wages, which are held as "special funds in trust for the United States." Plett v.
United States, 185 F.3d 216, 218 (4th Cir. 1999).

and operated Premier until 2004 when he became employed in pharmaceutical sales. Husband was solely responsible for the operation of the business. He was the only one authorized to sign business checks. Income from Premier was: 2000 - $34,000; 2001 - $34,000; 2002 - $74,000; 2003 - $72,000. Husband chose to close the business in 2004.

Husband had transferred from the business account to wife's checking account the following sums: 2000 - $1,650; 2001 - $1,700; 2002 - $20,000; 2003 - $23,000; 2004 - $7,000. However, husband testified he paid a number of family bills directly from his business checking account.

Throughout the operation of Premier, husband would not discuss business matters with wife, claiming wife had "no business sense." Wife's parents would financially assist the parties to accommodate the parties' lifestyle, including private school for the children and membership to a private country club. During the marriage, the parties would find themselves "behind on certain bills," including the mortgage. Wife testified husband would recklessly spend money on property that was not needed by the family, such as a riding lawnmower, a new TV, and a surround sound system, all when husband claimed he could not afford to pay the payroll taxes.

As early as the summer of 2000, wife was aware husband was not paying payroll taxes due the federal government. Wife discussed this problem with her mother. Her mother gave her several thousand dollars in the fall of 2004. Wife hired a bookkeeper to organize Premier's business records. Wife took the books to a CPA. The accountant prepared tax returns which husband signed and sent to the IRS.

Although husband hired a bookkeeper when he founded Premier, he terminated her within several months, in the summer of 2000. When wife asked husband if he was paying the taxes, husband responded he could not afford to do so. Wife admonished husband that he had to pay the taxes. Husband replied that wife had no business sense and refused wife's offer to assist

with the bookkeeping. During the period of Premier's operation, from 2000 to 2004, wife would monthly demand that husband pay those taxes.

By the third and fourth years of operation, business income increased to about $72,000 - $74,000 per year. Wife told husband that since he was now making more money, he must pay the taxes. Wife began filing a separate income tax return beginning in 2001.[2]

Knowing of the delinquency, wife encouraged husband to work out a payment plan with the IRS, to show good faith on husband's part. Wife suggested they sell their house and use the proceeds to pay the IRS. Husband rejected wife's proposals.

Husband explained he could either remit the payroll taxes to the government or pay the mortgage and household bills. He felt they were living "beyond our means" and believed wife could not manage money. Husband did not think the children should be in private school and ultimately persuaded wife to remove the children from private school. He also opposed joining the country club because it was not his lifestyle and it was too expensive.[3] Husband testified he brought in enough money to pay the bills but wife's "reckless spending" prevented them from remaining current on their bills, particularly the mortgage which became delinquent in 2005.

Acknowledging he had sole control over the expenditure of funds retained by Premier after transferring funds to wife's checking account, husband testified he did not pay the payroll taxes because of the financial demands of wife. Husband explained no matter what income he earned, it was never enough to maintain the household because of wife's spending habits. When asked why he simply did not stop funding wife's spending, husband replied, "I couldn't do that."

---

[2] Husband owed the IRS $103,820 as of January 3, 2008 for his federal personal income taxes, but this debt is not subject to this appeal.

[3] While wife's father paid the initiation fee, the parties paid a monthly fee of $300-$800, depending on monthly assessments, until they resigned in 2003.

Wife denied husband's claims that she recklessly spent money. She indicated her spending was generally for groceries, children's expenses, and gas for her car. As previously indicated, her parents paid for most of her clothing and the children's private school.[4]

In determining that the payroll tax debt was marital debt,[5] the trial court made certain factual findings: the parties consistently spent more money than they could afford; while the parties discussed how to pay the tax liability, there was no discussion about budgeting their expenses; both parties were at fault for the failure to properly budget; wife knew the payroll taxes were not being paid; and while the parties would decide what bills would be paid, the same emphasis did not appear to be placed on paying the tax debt.

The trial court concluded:

> Therefore, it is this Court's position that the wife had the burden of showing that the property - - how the debt - - why the debt was occurred [sic] and the purpose of the expenditure of the debt.
>
> And the Court finds that both parties benefited from the payroll tax not being paid and of the personal property tax not being paid.
>
> While there was no specific evidence of where all the monies went, the evidence from both parties showed the husband and the wife lived beyond their financial means, and that both parties benefited when the monies were not paid because they used the monies to finance their lifestyle, including the wife working part-time in 2004.

In the final decree, the trial court reiterated its finding that funds which would have been used to pay the payroll taxes were expended to meet the parties' living expenses and to pay marital debt. The trial court found the payroll taxes to be marital debt and allocated the debt as follows: Each party shall pay 50% of the principal amount of the payroll tax liability and

---

[4] Wife testified that the children's private school expenses were paid by her father and by financial aid and "We had to pay very little."

[5] The payroll tax due the United States government was $118,287.69 as of October 12, 2006, including penalty and interest.

- 4 -

husband shall pay 65% of the interest and penalties and wife shall pay 35%, subject to certain limitations.[6]

This appeal follows.

ANALYSIS

Classification of Debt

Pursuant to Code § 20-107.3(A), a court dissolving a marriage, "upon request of either party, shall determine the legal title as between the parties, and the ownership and value of all property" and shall classify that property as separate property, marital property, or part separate and part marital property. "The court shall also have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E." Code § 20-107.3(C).

The trial court's classification of property as marital or separate is a factual finding. Therefore, that classification will be reversed on appeal only if it is "'plainly wrong or without evidence to support it.'" Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005) (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994)).

Marital property is all property titled in the names of both parties and all other property acquired by each party during the marriage which is not separate property, i.e., property received during the marriage by bequest, devise, descent, survivorship or gift from someone other than the spouse. See Code § 20-107.3(A)(2). "All property . . . acquired by either spouse during the marriage, and before the last separation of the parties . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Id. This presumption applies to the parties' debts as well as their assets. See Stumbo v. Stumbo, 20 Va. App. 685, 692-93, 460

_____

[6] The allocation of the "marital debt" is not before this Court on appeal, because it was not addressed in appellant's questions presented.

S.E.2d 591, 595 (1995) (referring to "marital property" as defined in Code 20-107.3 as including both assets and debts).

While the statute only creates a presumption for "all property" acquired during the marriage, we see no principled reason why the presumption should not apply to debt acquired during the marriage. Property and debt are both components of an equitable distribution award.

In an equitable distribution proceeding, the court must determine "the legal title as between the parties" and "the ownership and value" of all the parties' property and then classify this property as "marital," "separate," or "part separate and part marital." Code § 20-107.3(A). After this is done, the court may (1) order the division or transfer, or both, of jointly owned marital property, (2) apportion and order the payment of marital debts, or (3) grant a monetary award to either party. See Code § 20-107.3(C), (D). The court must determine the amount of its award of any of these remedies "upon the factors listed in [Code § 20-107.3(E)]." Id. See also von Raab v. von Raab, 26 Va. App. 239, 245-46, 494 S.E.2d 156, 159 (1997).

We begin our analysis with the trial court's determination that the debt is marital because it benefited the parties. In classifying property as marital or separate, the trial court must consider "when property is acquired, and, similarly, when debt is incurred, a trial court must determine the purpose of expenditure in order to classify property as marital or separate or to 'allocate' debt as marital or separate." Stumbo, 20 Va. App. at 692-93, 460 S.E.2d at 595. In Stumbo, we clearly equated marital property with marital debt for equitable distribution purposes. And again, the statute creates a presumption that property acquired during the marriage is marital. Thus, the party seeking to show that property is separate has the burden to do so. See Courembis v. Courembis, 43 Va. App. 18, 34, 595 S.E.2d 505, 513 (2004) ("The party claiming that property acquired during the marriage is separate property bears the burden of rebutting this presumption.").

- 6 -

If there were no presumption concerning debt acquired during the marriage, then the party claiming a debt is marital would have the burden of proof. It is illogical to allocate the burden of proof differently based solely on whether it is property or debt, particularly in light of our opinion in Stumbo that property and debts receive the same treatment for an equitable distribution analysis. Thus, we conclude that any debt incurred by either party during the marriage is presumptively a marital debt.

Whether a debt is classified as marital or separate depends on who benefited from the debt. Brett R. Turner, Equitable Distribution of Property § 6.97, at 500 (3d ed. 2005); see also Gamer v. Gamer, 16 Va. App. 335, 341-42, 429 S.E.2d 618, 623 (1993).

> The Internal Revenue Code requires that employers withhold federal income taxes and social security taxes from their employees' wages. See 26 U.S.C. §§ 3402(a), 3102(a). Because the employer holds these taxes as "special fund[s] *in trust* for the United States," 26 U.S.C. § 7501(a) (emphasis added), the withheld amounts are commonly referred to as "trust fund taxes," Slodov v. United States, 436 U.S. 238, 243 (1978) (internal quotation marks omitted). While an employer remains liable for its failure to remit trust fund taxes, the Internal Revenue Code also imposes *personal* liability, in an amount equal to an employer's deficient taxes, upon those officers or employers (1) responsible for collecting, accounting for, and remitting payroll taxes, and (2) who willfully fail to do so. See 26 U.S.C. § 6672(a); 26 U.S.C. § 6671(b); see also O'Connor v. United States, 956 F.2d 48, 50 (4th Cir. 1992) (outlining elements of § 6672 liability).
>
> \* \* \* \* \* \* \*
>
> A responsible person's intentional preference of other creditors over the United States establishes the element of willfulness[7] under § 6672(a). See United States v. Pomponio, 635 F.2d 293, 298 n.5 (4th Cir. 1980). And an intentional preference, in turn, is established by showing that the responsible person "[knew] of or

---

[7] It is undisputed husband willfully failed to pay the tax.

> recklessly disregard[ed] the existence of an unpaid deficiency."
> Turpin [v. United States], 970 F.2d [1344,] 1347 [(4th Cir. 1992)].

Plett v. United States, 185 F.3d 216, 218-19 (4th Cir. 1999).

In ruling on the classification of the trust fund tax debt, the trial court stated,

> The sixth factor is the debts and liabilities of each spouse, the basis for such debts and liabilities. The husband has significant tax liabilities due to his failure to pay the employee payroll taxes and his personal income taxes.
>
> In determining whether a debt is marital or separate in terms of the tax liability, the Court is going to use the definition set forth in Smith versus Smith.[8] And there the court stated that when a debt has occurred, the trial court must determine the purpose of the expenditures in order to classify the property as marital or separate, or to allocate the property as marital or separate.
>
> And the Court finds that both parties benefited from the payroll tax not being paid and of the personal property tax not being paid.
>
>         * * * * * * *
>
> While there was no specific evidence of where all the monies went, the evidence from both parties showed the husband and wife lived beyond their financial means, and that both parties benefited when the monies were not paid because they used the monies to finance their lifestyle, including the wife working part-time in 2004.

In reviewing the case law, the trial court articulated that it must consider the purpose of the trust fund tax debt. However, the court then discussed only that the money not paid to the IRS benefited both parties, because it was used to support their lifestyle. The trial court used its finding that both parties benefited from the debt as its sole reason for classifying the debt as marital debt. The trial court discussed only the use of those funds that were not used to pay the debt. The trial court did not discuss the purpose of the original debt.

---

[8] Smith v. Smith, 43 Va. App. 279, 290 n.5, 597 S.E.2d 250, 255 n.5 (2004) (stating that "'when property is acquired, and similarly, when debt is incurred, a trial court must determine the purpose of expenditure in order to classify property as marital or separate or to "allocate" debt as marital or separate'" (quoting Stumbo, 20 Va. App. at 692-93, 460 S.E.2d at 595)).

The trial court used the concepts of *purpose* of the debt and *effects* of the failure to pay the debt interchangeably. Suppose a husband borrowed money from an equity line on the marital home. The husband used the proceeds of the loan to support his paramour. No one would suggest this loan is marital debt, as its purpose did not further any marital purpose. Yet under the trial court's ruling, if the spouse failed to pay the equity line, then the marriage benefited, because there were additional funds to pay marital expenses, and thus the debt became a marital debt. This hypothetical mirrors the facts of this case.

Under most circumstances, the purpose of the debt can be evaluated by determining who benefited from the debt. A credit card debt whose purpose is to finance a family vacation clearly benefits the family and is a marital debt. The error here was in not determining the purpose of the original debt to the IRS. The proper analysis would include who benefited from the original debt, not from the failure to pay that debt.

By considering only who benefited from the failure to pay the debt, the trial court erred in not considering the purpose of the original debt, i.e. the "trust fund tax." Without consideration of the purpose of the debt, the logical extension of the trial court's ruling would be to always find marital debt resulting from gambling, criminal fines, and restitution if any of the proceeds from the illegal activity in any way benefited the marriage.

Further, the trial court did not consider the criminal implications of husband's failure to pay the debt. By failing to remit these taxes, husband could have been exposed to criminal liability. 26 U.S.C. § 7202 provides:

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

The trial court did not properly consider the factors required to classify the debt. The trial court's ruling created an anomalous situation allowing husband to better his position by failing to discharge a federally mandated obligation that has potential criminal implications. Essentially, husband benefited from his violation of federal law. See Zysk v. Zysk, 239 Va. 32, 34, 404 S.E.2d 721, 722 (1990) (courts will not assist the participant in an illegal act who seeks to profit from the act's commission).[9]

### Burden of Proof

Wife also contends that the trial court erred in holding that wife had the burden to prove that the trust fund taxes were not a marital debt. Wife argues that she should not have had the burden of proof because 1) husband alone owned and controlled the company which employed the workers whose taxes husband failed to pay, 2) the company's voluminous transactions during the years at issue totaled almost $1.175 million, and 3) the knowledge and information regarding the company's transactions were uniquely within husband's possession and were not delivered to wife until 10 days prior to the hearing. We disagree.

"All property . . . acquired by either spouse during the marriage, and before the last separation of the parties . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2). See Stumbo, 20 Va. App. at 692-93, 460 S.E.2d at 595 (referring to "marital property" as defined in Code § 20-107.3 as including both assets and debts). Wife is not relieved of this burden because of the cumbersome nature of husband's business' financial records. We affirm the trial court's ruling as to the wife's burden of proof.

---

[9] The Supreme Court of Virginia overruled Zysk *as it relates to private, consensual sexual conduct* in Martin v. Ziherl, 269 Va. 35, 43, 607 S.E.2d 367, 371 (2005), because Virginia's fornication statute was unconstitutional under the holding of Lawrence v. Texas, 539 U.S. 558 (2003). However, the proposition that a party cannot profit from his immoral or illegal acts remains good law.

<u>CONCLUSION</u>

Therefore, we affirm, in part, and reverse, in part, the ruling of the trial court and remand for the trial court to consider the purpose of the trust fund tax debt, as well as who benefited from it, in order to classify that debt as marital or separate, while considering that wife has the burden to show that the debt is separate.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>