COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges O'Brien, Malveaux and Senior Judge Frank


KRISTOPHER LaFLAMME

                                          MEMORANDUM OPINION[*]

v.       Record No. 1155-20-1                        PER CURIAM
                                                    APRIL 13, 2021

VIRGINIA BEACH DEPARTMENT
 OF HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

(Sharri D. Mapp-Jones; The Mapp Law Firm, PLLC, on brief), for
appellant.

(Mark D. Stiles, City Attorney; Christopher S. Boynton, Deputy City
Attorney; Elena E. Ilardi, Associate City Attorney; Lisa Jackson,
Guardian *ad litem* for the minor child; Phillips & Peters, PLLC, on
brief), for appellee.


Kristopher LaFlamme (father) appeals an order terminating his parental rights to his

youngest child and approving the foster care goal of adoption.  Father argues that the circuit court

"erred in finding the evidence sufficient to support the termination of [his] parental rights pursuant

to Virginia Code § 16.1-283(C)(2) and changing the goal from adoption/return home to solely

adoption . . . ."  Upon reviewing the record and briefs of the parties, we conclude that this appeal

is without merit.  Accordingly, we summarily affirm the decision of the circuit court.  See Rule

5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

In October 2018, Suzanne Pohlman (mother), who was homeless, gave birth to the child in a tent in the woods.[2] Mother went to an acquaintance's house but refused to seek medical treatment for herself or the child. Mother's acquaintance contacted the authorities. The police and emergency medical services spoke with mother, who indicated that the child had "barely eaten, not urinated, or had any bowel movements." The Virginia Beach Department of Human Services (the Department) also responded, and the social worker noticed that the child was "covered in blood" and his umbilical cord was fully attached and not clamped. At the time, mother reported that the child's biological father was "incognito" and refused to provide any further information about him. Mother finally agreed to allow the child to be transported to the hospital, where he remained for several days.

The Department subsequently learned that mother had a history of psychiatric illness and had been diagnosed with acute psychosis, schizophrenia, and paranoid delusions. She also had a criminal history and was not forthcoming with the Department about her past. She did not have

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Father was not present at the child's birth because he and mother had ended their relationship before he was aware that she was pregnant.

- 2 -

a plan to care for the child. The Department removed the child from mother's care, and the Virginia Beach Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order and preliminary removal order, granting temporary legal custody to the Department. The JDR court subsequently adjudicated that the child was abused or neglected and entered a dispositional order. The Department tried to offer services to mother, but she was uncooperative.[3]

The Department did not learn of father's identity until June 2019. The Department published a termination of parental rights notification in the local newspaper, and father's mother, the child's paternal grandmother, contacted the Department. Father and the paternal grandmother met with the Department, which arranged a paternity test. On June 27, 2019, the JDR court reviewed the results of the paternity test and found that father is the child's biological father.

The Department learned that father has four older children, who had been in the paternal grandmother's custody since 2017.[4] Father had limited contact with his four older children and did not provide financial support for them.

The Department began offering services to father and reviewed its requirements with him. Because father had a history of homelessness, the Department required father to maintain safe and stable housing, as well as have sufficient financial resources to support himself and the child. The Department also was concerned about father's history of substance abuse and untreated mental illness, so it referred father for a substance abuse evaluation and a parenting

---

[3] Mother's parental rights were terminated.

[4] Father's four older children have a different mother than the child who is the subject of this appeal.

capacity evaluation. In addition, the Department required father to participate in visitations and family partnership meetings and assisted him with transportation to those appointments.

On August 17, 2019, father participated in the parenting capacity evaluation with Dr. Tuesday Smith. Father reported a history of depression and admitted using marijuana regularly. Dr. Smith opined that father's "habits [of drinking alcohol and using marijuana] likely raise concerns regarding his future parenting capabilities." Dr. Smith found that father had "generally appropriate knowledge and skills for parenting." Father's strengths included "having alternatives to corporal punishment, having a healthy self-concept as a parent, and having an understanding of his children's needs/emotions." Dr. Smith's concerns for father included "placing unreasonable expectations on his children; he may also tend to expect rigid compliance from them, at times." Dr. Smith was further concerned about father's poor personal hygiene, "history of homelessness, history of substance abuse, history of depression, and his lack of involvement with his four older children." Dr. Smith recommended outpatient therapy, substance abuse treatment, and parenting education classes.

Father participated in a substance abuse assessment. The evaluator recommended substance abuse treatment and random drug screens. Father started substance abuse treatment in December 2019. In January and February 2020, father tested negative for drugs.

Father also participated in the "Fathers in Training" program, which he described as "positive and helpful." Father regularly attended the weekly supervised visits with the child.[5] At first, the child had an "extreme adverse reaction" to father; however, over time, the child learned to "self-sooth[e]" and play with father.

---

[5] Father's last in-person visit was in February 2020; his in-person visits stopped due to the COVID-19 pandemic. Father visited via video chats, but the child did "not engage." Father had an opportunity to start in-person visits again but chose to continue with the video chats because he could not "take off during the day to attend visits."

- 4 -

The child had lived with the same foster family since he was five days old. The child had become "very much attached" to his foster parents and had adjusted "very well" to his placement. The Department was concerned that attachment to a new caregiver would be "more difficult with each passing week and month."

In January 2020, the Department had "significant concerns regarding [father's] intermittent investment in services." Father had not started outpatient therapy, and he had not obtained a psychiatric evaluation to determine whether psychotropic medication would be helpful. The Department also had been unable to verify father's employment but subsequently learned that he was unemployed. The Department was concerned about father's ability to maintain his residence without an income. Father lived in a mobile home, which had a bedroom for the child. Father still needed certain baby items, such as a highchair and crib or toddler bed. The Department was concerned about father's ability to meet the child's needs and whether he was "fully committed to being a single parent for an active toddler," especially because he was not actively involved in his four older children's lives.

On February 25, 2020, the JDR court terminated father's parental rights and approved the foster care goal of adoption. Father appealed the JDR court's orders to the circuit court.

The parties appeared before the circuit court on August 26 and September 11, 2020.[6] The child's guardian *ad litem* (the GAL) filed a report detailing her investigation. The GAL noted that father had quit his job and was panhandling for approximately ten months until he obtained employment shortly before the circuit court hearing. The paternal grandmother financially assisted father with some of his expenses. The GAL reported that father did "not have a realistic idea of his day-to-day life with [the child]." The GAL further informed the circuit court that the

---

[6] The record does not include a timely filed transcript of the hearings or a written statement of facts in lieu of a transcript. On January 25, 2021, this Court denied father's motion for an extension of time to file a late transcript.

child was doing "remarkably well" and was "very bonded with his foster family," who planned to adopt the child if parental rights were terminated. After hearing the evidence and arguments, the circuit court approved the foster care goal of adoption and found that it was in the child's best interests to terminate father's parental rights under Code § 16.1-283(C)(2). The circuit court entered a final order on September 11, 2020. This appeal followed.

ANALYSIS

Father argues that the circuit court erred in terminating his parental rights and approving the foster care goal of adoption. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The record does not include timely filed transcripts from the circuit court hearings or a written statement of facts in lieu of a transcript. See Rule 5A:8. Father endorsed the circuit court's final order as "Seen and Object." "Ordinarily, endorsement of an order '[s]een and objected to' is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error." Canales v. Torres Orellana, 67 Va. App. 759, 771 (2017) (*en banc*) (quoting Herring v. Herring, 33 Va. App. 281, 286 (2000)); see also Courembis v. Courembis, 43 Va. App. 18, 26 (2004) ("Such an objection is not sufficient under Rule 5A:18 to preserve an issue for appeal."). "Such an endorsement is sufficient to satisfy Rule 5A:18 only if 'the ruling made by the trial court was narrow enough to make obvious the basis of

appellant's objection.'" Canales, 67 Va. App. at 771 (quoting Herring, 33 Va. App. at 286). Assuming without deciding that father preserved his arguments for appeal, we find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2) and approving the foster care goal of adoption.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Father argues that he complied with the Department's requirements and substantially remedied the conditions that required the child's continued placement in foster care. Father emphasizes that he had housing and sufficient financial resources. He had maintained contact with the Department and consistently visited the child. In addition, he completed a parenting capacity evaluation and a substance abuse assessment. His drug screens were negative, and he participated in substance abuse treatment. Father contends that the circuit court erred by terminating his parental rights and changing the foster care goal from return home/adoption to solely adoption. We disagree.

The Department and the GAL had numerous concerns about father's ability to parent the child. Father reported to Dr. Smith that he had a history of depression and other mental health concerns, so Dr. Smith recommended outpatient therapy. The GAL determined that father

attended only two counseling appointments before he discontinued therapy. In addition, father did not show financial stability. He admittedly engaged in panhandling for months, and the paternal grandmother told the GAL that she paid some of father's expenses. Furthermore, despite participating in the "Fathers in Training" program, father did not have a plan in place for the child.

At the time of the circuit court hearing, the child had been living with the same foster family for approximately twenty-two months. By all accounts, the child was especially attached to his foster mother, who had been his primary caregiver since he was five days old. Even though the Department had offered numerous services to father, he still was not in a position to care for the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the record before us, the circuit court did not err in terminating father's parental rights and approving the foster care goal of adoption.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.