COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


STEVEN G. WASHINGTON

v.        Record No. 2100-04-2

SOFIA T. WASHINGTON                          MEMORANDUM OPINION[*] BY
                                               JUDGE LARRY G. ELDER
SOFIA T. WASHINGTON                             MAY 3, 2005

v.        Record No. 2188-04-2

STEVEN G. WASHINGTON


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

W. Joseph Owen, III (Christopher F. Cowan; Samuel J. Kaufman;
Cowan & Owen, P.C., on briefs), for Steven G. Washington.

Susanne L. Shilling (E. Ryan Meyer; Shilling & Associates; E. Ryan
Meyer, PLLC, on briefs), for Sofia T. Washington.


Steven G. Washington (husband) and Sofia T. Washington (wife) have filed

cross-appeals from a circuit court ruling resolving issues related to their divorce.  On appeal,

husband contends the trial court erroneously valued and divided husband's business and

erroneously refused his request to use an alternate valuation date.  Husband also contends the

trial court erred in awarding sole custody of the parties' two minor children to wife and in

limiting the amount of his visitation with the children.  Finally, he contends the court erred in

awarding attorney's fees to wife.  In her cross-appeal, wife contends the trial court erroneously

failed to classify and divide between the parties the portion of student loan debt she incurred that

--------------------

   [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

she contended was used for the family's living expenses.  Wife also seeks an award of attorney's

fees on appeal.  We hold the evidence supports the trial court's rulings and decline wife's request

for an award of attorney's fees on appeal.  Thus, we affirm.

I.

A.

EQUITABLE DISTRIBUTION

"Fashioning an equitable distribution award lies within the sound discretion of the trial

judge . . . ."  Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

Although the trial court must consider all factors set out in Code § 20-107.3(E), it "need not

quantify or elaborate exactly what weight was given to each of the factors" as long as its

"findings . . . [are] based upon credible evidence."  Taylor v. Taylor, 5 Va. App. 436, 444, 364

S.E.2d 244, 249 (1988).

1.  Husband's Business

a.  Valuation Date and Value

A court effecting an equitable distribution of marital property "shall determine the value

of any such property as of the date of the evidentiary hearing on the evaluation issue.  Upon

motion of either party . . . the court *may*, for good cause shown, in order to attain the ends of

justice, order that a different valuation date be used."  Code § 20-107.3(A) (emphasis added).

> Where an asset that is subject to equitable distribution is retained
> by one of the parties for a period of time . . . before the equitable
> division occurs and the asset significantly increases or decreases in
> value during that time through neither the efforts or fault of either
> party, neither party should disproportionately suffer the loss or
> benefit from the windfall.

Rowe v. Rowe, 33 Va. App. 250, 263-64, 532 S.E.2d 908, 915 (2000).

Here, husband moved the court to value his interest in Washford Enterprises as of the

date of the parties' separation, February 15, 2002, rather than the date of the evidentiary hearing,

held over two years later on April 23, 2004.[1]  Thus, pursuant to Code § 20-107.3(A), husband

bore the burden of establishing good cause for his request.  See Kaufman v. Kaufman, 7

Va. App. 488, 499-500, 375 S.E.2d 374, 380 (1988).

Although the evidence established husband's business increased in value between the

date of the parties' separation and the date of the evidentiary hearing, no evidence established

that this increase occurred due to any extraordinary effort on husband's part, beyond the effort he

was already expending before the separation to develop the business and fill the group home

with clients.  See Rowe, 33 Va. App. at 263-64, 532 S.E.2d at 915.  Any increase could just as

easily have been attributable to husband's and wife's pre-separation efforts to set up the

necessary physical facilities and make the necessary professional contacts in the community, or it

could have resulted from post-separation factors not directly within husband's control, such as a

decrease in the number of homes competing for similar clients or an increase in the number of

available clients.  Absent evidence of extraordinary effort, husband has not established he was

entitled to have the court use an alternate valuation date.

In valuing a business for purposes of equitable distribution, the standard is that value that

represents the property's "intrinsic worth" to the parties upon divorce.  E.g. Bosserman v.

Bosserman, 9 Va. App. 1, 6, 384 S.E.2d 104, 107 (1989).

> Because intrinsic value must depend on the facts of the case, we
> give great weight to the findings of the trial court.  We affirm if the
> evidence supports the findings and if the trial court finds a
> reasonable evaluation based on proven methodology and on the
> application of it to the particular facts of the case.

------

[1] The dates for which evidence was actually presented were December 31, 2001, and
December 31, 2002, because these were the dates closest to the separation and evidentiary
hearing for which accurate financial information was available.

Howell v. Howell, 31 Va. App. 332, 339, 523 S.E.2d 514, 518 (2000). "The trial court has discretion to resolve conflicting expert testimony to determine an asset's value." Id. at 341, 523 S.E.2d at 519.

The trial court expressly accepted the testimony of wife's expert, William Dacey, who valued husband's share of Washford Enterprises at $176,000 using an income method of valuation involving the capitalization of historical earnings. Under the facts viewed in the light most favorable to wife, we hold the court's decision to accept this valuation was not erroneous.

Citing Shooltz v. Shooltz, 27 Va. App. 264, 274-75, 498 S.E.2d 437, 442 (1998), husband contends that the business' historical earnings could not be capitalized because the business was new and had no earnings history. However, Shooltz involved two businesses that were not yet operational and unrebutted expert testimony that "valuation methods which depend on earning . . . are never used for the valuation of a business with no operating history." Id. at 272, 274-75, 498 S.E.2d at 441, 442. Based on that evidence, the trial court held that a valuation based on projected future earnings was speculative, and we affirmed that ruling. Id. at 274-75, 498 S.E.2d at 442. Here, by contrast, the business at issue was incorporated in 2000, had been operating since March 2001, and was valued as of December 31, 2002. When husband attempted to challenge Dacey's evaluation on cross-examination based on a lack of historical earnings, Dacey testified, "I had the historical earnings of the business." Thus, Dacey's expert opinion was that the business' earnings records for tax years 2000, 2001, and 2002 were sufficient to provide him with the necessary earnings history.

Husband also contends that Dacey's valuation was flawed because it was based on what husband contended was the unfounded assumption that the business "runs by itself on 'automatic.'" The evidence, viewed in the light most favorable to wife, supported the conclusion that, once the facility was established and filled with children, it required minimal input from

husband.  Wife testified at the evidentiary hearing husband told her that once the home was

established and occupied by the full number of children,

> there's not much you need to do.  You've got people who are there
> overnight, and it pretty much runs itself, because the children who
> are there, they're going to stay there for a period of three, four, five
> years.  And once you have a good set of children in there, it runs
> itself, and then, furthermore, once you have a template, which
> [husband] was trying to [create], . . . you can open up various
> group homes and help others open up group homes, . . . and then
> just kind of sit back and get a cut.

Husband himself testified at the *pendente lite* hearing on November 3, 2003, that he had a partner

in the group home, "program managers who run the program," "case managers, who case

manage it," and "a 24-hour-a-day staff that works three shifts."  He also testified that he did not

have to work in the afternoons.  Thus, the evidence, viewed in the light most favorable to wife,

supported the assumptions underlying Dacey's valuation.

Husband next challenges Dacey's decision to reduce, for valuation purposes, the actual

salaries paid to him and his partner, Gary Ford, which resulted in a corresponding increase in the

business' retained earnings and overall value.  Under settled principles, a reasonable salary for a

business' owners is a proper expense to be deducted before determining the business' value

under the income approach, but if expenses are found to be excessive, "they can be reduced to

reasonable levels for valuation purposes."  Brett R. Turner, Equitable Distribution of Property

§ 7.07, at 535 (2d ed. 1983); see Rattee v. Rattee, 767 A.2d 415, 418-19 (N.H. 2001).  Here,

Dacey testified that based on both industry averages for officers' compensation and husband's

representations regarding the amount of time required to operate the business, he reduced the

salaries for the business' two principals from a total of $92,917 for both to $80,000 for both.

Dacey also opined that even the $80,000 figure was "probably high."  The trial court, as the

finder of fact, was entitled to accept Dacey's testimony as credible, despite the fact that Dacey

did not cite any source upon which he relied to support his determination regarding industry averages.

Husband also complains that Dacey did not properly apply the income approach to valuing the business. He cites the testimony of his own expert, Robert Raymond, who stated as follows: "[Dacey] . . . took [the income], tax affected it, and divided it by a capitalization rate and came up with a number. The proper variable to capitalize would be cash flow to equity. That's clear from any treatise that one studies about this approach. And so . . . it's simply not correct." We hold the trial court did not err in accepting Dacey's valuation as a proper application of the income method. As one commentator has noted, the capitalization of total earnings method "begins with the annual earnings of the business," which may be "[e]ither gross earnings or net earnings . . . , although net earnings is probably more favored." Turner, supra, § 7.08, at 542 & n.258. To the extent husband now complains Dacey failed to consider personal loans husband may have obtained and put into the business in 2002, husband bore the burden of proving the fact and amount of those loans. The evidence established that husband eventually provided financial information showing cash going into the business' accounts, but Dacey testified that the records provided gave him "no idea where [the money] came from." Because husband failed to offer any independent evidence as to the fact and amount of these alleged loans, Dacey's reliance on the business' tax returns for the data he used to value the business was not error.

Finally, husband complains that Dacey's business valuation was inconsistent with his testimony regarding husband's income for purposes of calculating child support. Assuming without deciding Dacey's inclusion of the retained earnings sum in both the child support and business calculations was error, Dacey clearly explained that the basis for his income calculation for purposes of child support included husband's share of Washford Enterprises' retained

earnings. The trial court accepted husband's representations regarding his income for child support purposes, choosing *not* to include those retained earnings in its calculations, and husband has not assigned error to the trial court's calculation of his income on appeal. Thus, no error occurred.

The evidence supports a finding that "the trial court [made] a reasonable evaluation based on proven methodology and on the application of it to the particular facts of the case." See Howell, 31 Va. App. at 339, 523 S.E.2d at 518. We may not disturb that determination on appeal.

### b. Division

Husband contends the trial court erred in awarding wife twenty-five percent of the value of Washford Enterprises. He contends that she did not participate in the development of the business and that she was able to become a physician due in large part to husband's willingness to postpone his own career aspirations, which he contends entitles him to retain one hundred percent of the value of the business. We find no abuse of discretion.

"All property . . . acquired by either spouse during the marriage . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A). Code § 20-107.3(E) sets out a non-exclusive list of factors to be considered by a court fashioning an equitable distribution award. "We rely heavily on the trial judge's discretion in weighing the particular circumstances of each case. Only under exceptional circumstances will we interfere with the exercise of the trial judge's discretion." Aster v. Gross, 7 Va. App. 1, 8, 371 S.E.2d 833, 837 (1988).

The factors for consideration include "[t]he contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties"

and "[h]ow and when specific items of such marital property were acquired." Code

§ 20-107.3(E)(2), (6). However, we have specifically observed that nothing in our case law

> should be construed . . . to sanction a disproportionate division of
> assets in favor of one party simply because that party has been
> *primarily responsible* for the development of the marital assets.
> The non-monetary contributions of each party, as well as the other
> factors specified in Code § 20-107.3(E)[,] must be considered.

Zipf v. Zipf, 8 Va. App. 387, 393 n.2, 382 S.E.2d 263, 266 n.2 (1989) (emphasis added). Those

other factors include the monetary and nonmonetary contributions of each party to the well-being

of the family and any "other factors . . . the court deems necessary or appropriate to consider in

order to arrive at a fair and equitable monetary award." Code § 20-107.3(E)(1), (11).

Because husband's interest in Washford Enterprises was acquired during the marriage, it

was marital property subject to division regardless of whether wife directly participated in the

business' development and acquisition. Husband obtained the master's degree he testified he

needed to develop the template for Washford Enterprises during the marriage, and the evidence

established that wife's income from her work as a physician was the family's sole means of

support in the early days of husband's development of Washford Enterprises.

Further, the evidence, viewed in the light most favorable to wife, established that she

played an integral personal role in the development of the business. She served on the business'

board of directors and, based on her contacts in the medical profession, helped husband obtain

recommendations he needed from various physicians. She spent significant amounts of her free

time helping husband find a suitable location for the home. In addition, wife attended various

meetings with husband so that he could "tap into" her social services contacts in order to obtain

referrals for the group home. Finally, she testified she had a "tremendous amount of

involvement" with the house once it was established, including "buying the furniture, physically

setting up the home . . . , making sure the house was running[.]" She said that when they were

not in their own home, they were at the group home and even went on vacation with the home's residents. Finally, the evidence supported a finding that both parties made significant monetary and nonmonetary contributions to the well-being of the family.

Husband claims he put his career aspirations on hold in order to start a family while wife finished medical school and her residency and, thus, that he should have been allowed to keep the value of his entire share of Washford Enterprises. However, husband testified at trial that he was the one who wanted to have children before he reached his thirties and that he agreed to delay his own career aspirations to care for the parties' child while wife completed her medical training.

This evidence, taken as a whole, provides more than ample support for the trial court's decision to award wife an amount equal to twenty-five percent of husband's share of Washford Enterprises, and we hold the trial court did not abuse its discretion in making such an award.

## 2. Wife's Student Loans

"When considering whether to make an [equitable distribution] award, the court must first classify and value the parties' marital and separate property." Stumbo v. Stumbo, 20 Va. App. 685, 692-93, 460 S.E.2d 591, 595 (1995). The presumption in Code § 20-107.3(A) that "[a]ll property . . . acquired by either spouse during the marriage . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property" applies to the parties' assets as well as their debts. Cf. id. (referring to "marital property" as defined in Code § 20-107.3 as including both assets and debts). Code § 20-107.3 expressly authorizes a court effecting an equitable distribution "to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E." Code § 20-107.3(C).

Thus, to the extent the parties incurred loan debt for living expenses during the course of the marriage, those loans are marital property.[2] Upon request of the parties, the trial court had the duty to classify, value and divide them as part of the equitable distribution proceeding. See Code § 20-107.3(A), (C), (E)(7).

Under settled principles, in the absence of an express ruling by the trial court, we presume the trial court properly applied the law to the facts, see, e.g., Brown v. Commonwealth, 8 Va. App. 126, 133, 380 S.E.2d 8, 12 (1989), and concluded the debt was marital but opted not to hold husband responsible for wife's loan debt based on the evidence in the record. We hold the evidence in the record, viewed in the light most favorable to husband, the party prevailing below, supports that determination.

The party seeking division of a particular item of marital property bears the burden of presenting sufficient information from which the trial court may make determinations necessary to effect the equitable distribution. See, e.g., Torian v. Torian, 38 Va. App. 167, 177, 562 S.E.2d 355, 360 (2002) (holding court does not err in failing to divide marital asset where party fails to provide sufficient credible evidence of value). Here, although wife testified on the subject, she presented no records to substantiate the amount of her total student loan debt or the portion related to the parties' living expenses during the marriage. Further, even if the court found wife's testimony on this issue credible, it was entitled to conclude her testimony was insufficient to establish the total marital component of the debt. For example, she claimed a living expense debt of $14,230 for the 1993-1994 academic year, but the parties were not married until December 19, 1993. Thus, the court could have inferred that only a part of the loans wife incurred for living expenses during that academic year were marital and that wife failed to

_____

[2] We need not consider whether the tuition portion of the loan debt could have been classified as marital property under Virginia law because wife did not seek to have that portion of the debt divided.

present sufficient evidence regarding what portion she claimed to be marital. Further, wife admitted on cross-examination that, in addition to the amount of her tuition, she was required to pay for lab fees, books, and other educational expenses out of the money she had claimed was used for joint living expenses. Again, however, she provided no evidence of the amount of these fees. Thus, the court could have concluded wife failed to present sufficient credible evidence of the amount of loan debt she sought to have divided.

B.

CHILD CUSTODY AND VISITATION

Husband contends the trial court erred in awarding wife sole physical and legal custody of the parties' children and in limiting his weekday visitation with the children. He also contends the trial court erred in failing to communicate orally or in writing the basis for its custody and visitation award. We hold husband failed to preserve for appeal his claim that the trial court did not adequately communicate to the parties the basis for its custody and visitation determinations. On the merits, we conclude the custody and visitation awards were supported by the evidence.

Code § 20-124.3 provides that a court making a custody or visitation determination "shall communicate to the parties the basis of the decision either orally or in writing." This statute requires "a case-specific explanation (one that finds its contextual meaning from the evidence before the court) of the fundamental, predominating reason or reasons for the decision." Kane v. Szymczak, 41 Va. App. 365, 373, 585 S.E.2d 349, 353 (2003). Assuming without deciding that the trial court's statements were insufficient to meet the statutory requirement that the court communicate to the parties the basis for its decision, husband failed to make this objection to the trial court. In endorsing the trial court's order, husband objected to the court's findings on custody and visitation merely because he believed the evidence entitled him to play a greater role

- 11 -

in the children's lives than the order allowed.  He did not contend that the trial court failed to comply with the provision of Code § 20-124.3 requiring it to set out the basis for its rulings.  Had he done so, the trial court would have had the opportunity to flesh out its explanation in order to avoid a remand.  Thus, we hold husband waived his right to a more detailed explanation of the basis for the court's ruling.  See Torian, 38 Va. App. at 186-87, 562 S.E.2d at 364-65 (under statute permitting award of spousal support for defined duration and requiring court granting such an award to make written findings including "the basis for the nature, amount and duration of the award," holding party not entitled to raise objection to sufficiency of explanation for first time on appeal).  Compare Herring v. Herring, 33 Va. App. 281, 287-89, 532 S.E.2d 923, 927 (2000) (holding non-waivable statutory requirement that court making *child support* award deviating from guidelines amount must first calculate amount of support under guidelines and state reason for deviation because, *inter alia*, failure to explain numerical calculation and reason for deviation would provide insufficient information for court considering future request for modification) with Courembis v. Courembis, 43 Va. App. 18, 28-29, 595 S.E.2d 505, 510 (2004) (refusing to apply Herring to issue of spousal support).

When determining child custody or visitation arrangements pursuant to Code § 20-124.2, no presumption exists in favor of either parent, and the trial court is required to give "primary consideration" to the evidence presented as it relates to the factors listed in Code § 20-124.3 for determining what arrangement is in the best interests of the child.  See Code §§ 20-124.2, -124.3.  "The court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children," but the court retains the discretion to award "joint custody or sole custody."  Code § 20-124.2(B).  The trial court is not required to quantify or elaborate what weight or consideration it has given to each of the factors enumerated in Code § 20-124.3 or to weigh each

factor equally.  See Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995).  As long as the trial court's findings have some foundation based on the evidence in the record, the determination of child custody or visitation is not an abuse of discretion.  Cf. Trivett v. Trivett, 7 Va. App. 148, 153-54, 371 S.E.2d 560, 563 (1988).  In evaluating these rulings on appeal, we view the evidence in the light most favorable to the party prevailing below.  Lanzalotti v. Lanzalotti, 41 Va. App. 550, 554, 586 S.E.2d 881, 882 (2003).

Here, the evidence established that both husband and wife were loving parents who had been actively involved in their children's upbringing.  Husband may have been more involved in Skylar's care when wife was completing her pediatric residency, but the evidence supported a finding that wife nevertheless played a significant role in Skylar's upbringing and assumed a more significant role in the lives of Skylar and newborn Savion in 2001 when she completed her residency and began working as a physician for the Buckingham Community Health Center, approximately one year before the parties separated and three years before the evidentiary hearing.

The evidence also indicated that the parties had great difficulty making joint decisions regarding the children without the participation of a counselor or some other intermediary. Dr. Arnold Stolberg testified that he became involved in the parties' custody and visitation dispute in order to try to help restore the parents to their previous level of cooperative functioning but that his efforts had been largely unsuccessful.  He explained that the parties disagree on some important issues about education.  He testified that he would have liked to see the parties participate jointly in making decisions about the children but that he did not think they would be able to do so effectively without the participation of a third party.

Further, the evidence, viewed in the light most favorable to wife, established that on multiple occasions, husband had involved the parties' daughter in their disputes and that, on at

least one occasion, he threatened not to return the children to wife as scheduled until she provided him with certain information relevant to the divorce proceedings. Finally, husband was unwilling or unable to follow a schedule sufficient to ensure the parties' six-year-old daughter received adequate sleep and additional structure to meet her needs while she was with him. When she returned from weekend visitation at his house, she was often "easily set off, . . . cry[ing] . . . at little things."

This evidence, viewed in the light most favorable to wife, supported findings that one party should have primary legal and physical custody of the children and that the party best suited to have that custody was wife.

Many of these same facts supported the trial court's determination that father's visitation, especially his weekday visitation, should be limited. Wife testified that when the parties were still living together, she was the one who maintained the household's structure. She testified that after the separation, when husband had had the children on school nights, Skylar was repeatedly late for school and often failed to complete her homework on time. Nannies Colleen Kinsella and Sarah Paulk testified that wife's home was better stocked with food and clothing suitable for the children's needs and that wife maintained more structure for the children. They indicated that husband did not keep the children on a schedule and usually worked from home, which interfered with his ability to give full attention to his children on the afternoons they were at his house. Dr. Stolberg testified that he had originally been optimistic about husband's ability to spend time with the children on weekday afternoons, but that it did not look as if that arrangement was "going to have the benefit that [he] would have hoped." Dr. Stolberg also opined that the schedule they had been following prior to the *pendente lite* hearing involved "too much back and forth." He suggested that the babysitter be in charge Monday, Tuesday and Wednesday, when both parents worked, and that they have only "one home where all that takes

place," rather than having the children spend parts of each of those three weekdays in both homes.

Finally, the court adopted just such a schedule as a result of the *pendente lite* hearing, providing husband with weekly visitation from Thursday morning until Friday morning and, every other week, from Saturday morning until Sunday evening. Wife testified that this schedule worked fairly well, with only minor difficulties between its implementation in November 2003 and the evidentiary hearing in April 2004. The children were used to the routine but still had some difficulties settling down when they returned from husband's on Sunday evenings. Thus, the evidence supported the trial court's finding that the children needed to be older and more mature before being allowed to spend greater amounts of time with husband.

Thus, the evidence, viewed in the light most favorable to wife, supported a finding that the trial court's custody and visitation award was in the best interests of the children.

C.

ATTORNEY'S FEES

The trial court ordered husband to pay $4,000 of wife's approximately $12,000 in attorney's fees. Whether to award attorney's fees and costs rests within the sound discretion of the trial court. See, e.g., Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). Under the facts of this case, we hold the trial court's award of attorney's fees was not an abuse of discretion.

Immediately after wife filed a *pendente lite* motion for support and custody, she filed a petition for a temporary injunction based on husband's unilateral disregard of the parties' agreed visitation schedule. That petition also requested an award of "attorney's fees and costs incurred in connection herewith." Although the court did not rule on the request for a temporary injunction, following the *pendente lite* hearing a month later, it awarded sole legal custody to

- 15 -

wife and visitation in keeping with the schedule wife requested, indicating its implicit acceptance of wife's testimony supporting many of the allegations contained in her petition.

Wife also filed a motion to quash interrogatories husband propounded only after the court granted a continuance of the originally scheduled evidentiary hearing. The continuance was granted to allow husband to review wife's expert's valuation of husband's business, which was provided to husband only one day prior to the hearing scheduled for March 5, 2004. However, after that continuance was granted, wife propounded new interrogatories that dealt with issues unrelated to the valuation. The trial court ultimately ruled that it did not need the information husband sought, and it ordered that wife need not answer the interrogatories.

Because the evidence supported a finding that husband's "actions . . . contribute[d] to wife's costs to secure access to justice," Via v. Via, 14 Va. App. 868, 872, 419 S.E.2d 431, 434 (1992), the court's award of fees was not an abuse of discretion.

Wife seeks an award of attorney's fees on appeal. We decline that request for fees.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). In this context, and upon consideration of the record in this case, we hold husband's position was not so unreasonable as to entitle wife to an award of attorney's fees incurred in this appeal. "[W]e find the litigation addressed appropriate and substantial issues and that [husband did not] generate[] unnecessary delay or expense in pursuit of [his] interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Therefore, the request for an award of fees on appeal is denied.

## II.

For these reasons, we hold the evidence supports the trial court's rulings on the issues of equitable distribution, custody and visitation, and attorney's fees. Thus, we affirm. We decline wife's request for an award of attorney's fees on appeal.

Affirmed.